33  392
47  254
33  392
48  338

### No. 8207.

### VALMONT DECOUX VS. PIERRE LIEUX.

The fact that defendant in a suit for damages for malicious prosecution, acted under the advice of Counsel, is no excuse if the advice was given upon his misrepresentations of the circumstances of the case.

The admission or proof that such defendant is an upright and honest man, incapable of making a false oath, is not inconsistent with the charge of malice.

Malice may be inferred from the total want of probable cause.

Decoux vs. Lieux.

Probable cause means reasonable ground of belief, supported by circumstances sufficiently strong to warrant a cautious man in that belief, that the accused is guilty of the offense charged.

The prosecutor may have been honest, and may have actually believed in the truth of the affidavit made by him, and yet be liable for damages, if he acted without reasonable cause.

APPEAL from the Fifteenth Judicial District Court, parish of Pointe Coupée. *Yoist, J.*

---

*O. O. Provosty* for Plaintiff and Appellee :

In actions for malicious prosecution the burden of proof is on plaintiff to show both the want of probable cause and malice.

Malice is presumed from the want of probable cause. Hennen Dig., p. 823, No. 6.

Malice in law means an act done wrongfully and without reasonable and probable cause, and not, as in common parlance, an act dictated by angry feeling or vindictive motives. Jones vs. Nicholls, 3 Moore & Payne, 12.

Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense of which he is charged. Muns vs. Dupont, 3 Wash. C. C. R., 31.

The advice of counsel is not probable cause, where the counsel was not consulted bona fide and all the facts were not submitted to him. Greenleaf, vol. 2, par. 459, Am. Lead. Cases, Hare and Wallace's note, vol. 1, p. 223.

In actions of libel, slander, and malicious prosecution proof of damage is not necessary to recover ; the actual pecuniary damages can rarely be proved and are never the sole rule of assessment. Sedgwick on Measure of Damages, p. 39; 25 An. 175 ; 27 An. 219 ; 29 An. 172.

*Spencer & White* for Defendant and Appellant :

First—Malice and want of probable cause are essential to recovery in a suit for a malicious prosecution—the rule is elementary.

Second—The malice required "must be the result of bad feeling, joined with the knowledge of having no just cause of action." 6 An. 373.

Third—The admission in the record that the defendant " is an upright and honest gentleman, and would not make a false oath for the purpose of persecuting any one," necessarily excludes malice, and is, therefore, fatal to plaintiff's case.

Fourth—The proof shows want of malice and fails to show want of probable cause.

Fifth—The defendant acted under advice of counsel. 8 An. 12; 9 An. 219; 11 An. 289.

---

The opinion of the Court was delivered by

FENNER, J. This is a suit for damages for a malicious prosecution. The following is a summarized statement of the facts.

Lieux had made a contract to furnish necessary supplies to one Patin to raise a crop on land cultivated by the latter in 1878, and advanced under said contract sixty-one dollars and forty-six cents, when, on his refusing to make further advances in the mode and to the extent desired by Patin, the latter applied to Mrs. E. L. Decoux, the wife of plaintiff, who also kept a store, and made with her another contract for advances under which he received further advances to the amount of about one hundred dollars. Mrs. Decoux was separate in property from

her husband, and the store was kept in her name and for her account, though managed by her husband as her agent.

On the 10th of September, Lieux sued Patin before a justice of the peace and sequestered his crop of cotton, then in the field and ungathered. The crop was seized and placed in charge of a keeper.

Pending this seizure, Mrs. Decoux filed a petition, before the same justice of the peace, against Lieux, and obtained an injunction restraining him and his agents from doing anything to prevent Patin from gathering his crop and from delivering it to her, Mrs. Decoux.

After granting the injunction, the justice treated it as operating a dissolution of Lieux's seizure, and issued his order releasing Patin's crop, discharging the keeper, and restoring Patin to possession.

Patin, thereupon, proceeded with the gathering of his crop, hauled a part of it publicly, and in the daytime, to a public gin in the neighborhood, where one bale was ginned and baled and delivered to the plaintiff, Decoux, as agent for his wife, who also publicly and in the daytime had it hauled to his wife's store and deposited in the yard.

There seems to have been not the slightest attempt at concealment about any of these proceedings. The yard where plaintiff had the cotton deposited was the place where cotton received by the store was usually kept, and it was not hidden or made away with as might have been done.

Lieux, in the meantime, took proceedings to have the injunction dissolved, which was done on the 4th of October after all the above transactions had taken place.

Lieux swears that he was ignorant of the order of the justice of the peace releasing his seizure, discharging the keeper, and restoring Patin to possession. The keeper, however, testifies that he showed the order to Lieux when he received it.

However this may be, after the dissolution of the injunction, Lieux, finding the bale of cotton in possession of plaintiff, without any inquiry of either plaintiff or of Patin or of anybody else, so far as the record shows, as to how it came there, went before a justice of the peace and made an affidavit, to the curious effect, that " one Aristide Patin did maliciously dispose of three bales of cotton while the cotton was under attachment, and that one of the bales was found in the possession of Valmont Decoux, the agent of E. Decoux; wherefore, affiant prays that said Patin and Decoux may be apprehended and held to answer this charge."

On this anomalous charge, a warrant issued, plaintiff was arrested and brought before the justice, who, as a matter of course, discharged him.

Four days afterwards, Lieux, without any further inquiry shown

by the record, made another affidavit before the parish judge, distinctly and formally charging Patin with having stolen the cotton, and charging Decoux with the crime of receiving the cotton, knowing the same to be stolen, and again praying that they should be arrested and dealt with according to law. Plaintiff was again arrested, carried under arrest twelve miles to the court-house, where, without examination, he was released on giving bond to appear before the District Court. At the session of that court, the case was examined by the grand jury who returned "not a true bill," whereupon he was discharged by the court and his bond cancelled.

We have scrutinized this record most critically without finding a scintilla of evidence tending, in any manner, to justify the proceedings of Lieux in this prosecution.

The only pretense of excuse which he presents, is that he acted on the advice of counsel; but the testimony of his counsel shows that his advice was predicated upon a story related by Lieux, so completely at variance with the truth that he advised him to prosecute Decoux, not for receiving stolen goods but for larceny. He informed his counsel that "it was Valmont Decoux who had taken this cotton while under seizure. * * That the cotton had been stolen, taken away, and abstracted from the seizure in the night-time," etc. Common sense indicates, what the law maintains, that the justification which a man derives, in legal proceedings, from acting on the advice of counsel, depends exclusively upon the correctness of the facts stated by him as the basis of his counsel's opinion.

In this case, the representations of defendant to his counsel were so utterly unfounded, that the advice predicated thereon is not entitled to any consideration whatever.

It is manifest that, under the facts disclosed, Decoux had committed no crime whatever. The cotton belonged to Patin. His free use of it was only restrained so long as it was in custody under Lieux's seizure. When that seizure was released by order of the court which issued the writ, and the cotton was restored to his possession, Patin had the perfect right to control and dispose of the cotton, and Decoux had the right to receive it, in payment of a just debt, without committing any crime.

Lieux seems to have had no cause whatever for believing Decoux guilty of the crime with which he charged him, except the bare fact that he was in possession of the bale of cotton. The very publicity of that possession and the absence of concealment were badges of innocence, which should have put him on inquiry. The slightest inquiry would have developed the truth. The questioning of Decoux, of Patin, of the keeper whom he had left in charge of the cotton, of the constable or of

the justice of the peace, of any person who might be expected to know the facts, would inevitably have demonstrated the falsity of his suspicions.

It is difficult to conceive of a case more completely lacking in either actual or probable cause. His conduct was rash, reckless and unreasonable, evincing an utter absence of that caution and inquiry which a man should employ before making criminal charges against his neighbor. The reputation and liberty of the citizen are privileges too precious to be left at the mercy of such grossly inconsiderate proceedings as these.

There is found in the record a singular admission, that the defendant " is an upright and honest gentleman, and would not make a false oath for the purpose of persecuting anyone."

From the connection in which this admission appears in the record, it was evidently made to avoid the taking of testimony on that point, and is entitled to operate as a complete and conclusive substitute for such testimony. We cannot agree, however, with the learned counsel of defendant, that this admission is inconsistent with the existence of that malice which is essential to recovery in a suit for malicious prosecution.

The prosecutor may have been honest and may have actually believed in the truth of the affidavit made by him, and yet be liable in damages. To exculpate him, his belief must not only be *honest*, but also *reasonable*.

See 2 Greenleaf on Evidence, ? 455, quoted with approval and applied in the very case relied on by defendant's counsel, Barton vs. Kavanagh, 12 An. 332. We find the quotation made from the case in 6th An. to be taken from a dissenting opinion.

If there be a total lack of probable cause, and absence of grounds for *reasonable* belief in the truth of the charge, the very fact that the prosecutor is able to believe it on insufficient and unreasonable assumptions, would seem to be, in itself, rather evidence than rebuttal, of malice, considering the proneness of man readily to believe ill of those whom he dislikes.

There is not wanting in this case evidence showing that the relations of plaintiff and defendant had not been of an amiable character tending to support the presumption of malice resulting from the entire want of probable cause.

It appears, also, from the statements of defendant's own witnesses that, though honest, he was at times obstinate and unreasonable.

Nothing is better settled in our own, as well as in general jurispru-

dence, than that malice may be inferred from total want of probable cause, and that probable cause means reasonable grounds of belief supported by circumstances sufficiently strong to warrant a cautious man in the belief that the accused is guilty of the offense charged.

4 An. 377 ; 12 An. 53, 332 ; 9 R. 387, 418 ; 9 An. 219 ; 6 An. 577 ; 15 An. 421, 672 ; 29 An. 496 ; 4 Cush. 217, 238 ; 3 B. Mon. 4 ; 5 Bing. (N. C.) 722.

The uncharitable idiosyncrasies of individuals which enable them recklessly to give credence to base suspicions of their neighbor without inquiry and without reasonable grounds of belief, cannot protect them from responsibility for prosecutions thus wantonly instituted.

We fully recognize the lawful right, and even duty, of the citizen to set on foot criminal proceedings when he has reasonable grounds for believing an offense has been committed, and also the injustice and impolicy of mulcting him in damages merely because the prosecution fails. But equally sacred is the right of every citizen to be protected from the wanton and irreparable injury inflicted by criminal prosecutions for offenses of which he is innocent and of which there was no rational ground for believing him guilty.

The crime of the fraudulent receiver of stolen goods and, in the agricultural districts, of stolen cotton especially, is one peculiarly odious and cowardly. To be publicly accused and brought before the criminal tribunals on such a charge must deeply wound and mortify an innocent man, and inflict an injury upon his character which an acquittal cannot wholly repair.

This case presents all the elements of responsibility in damages in such cases, and we cannot think the verdict of the jury, in awarding only one hundred and fifty dollars, has done justice.

That amount would scantily reimburse the plaintiff for the expense and trouble incurred in his just action for redress.

We act within the limits of the strictest caution in increasing the judgment to five hundred dollars.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended so as to increase the amount thereof to five hundred dollars, and that, as thus amended, the same be affirmed, the costs of this appeal to be paid by defendant and appellee.

Rehearing refused.