(38 South. 162.)

No. 15,309.

VARA v. R. M. QUIGLEY CONST. CO.*

(Jan. 30, 1905.)

UNLAWFUL ARREST — ACTS OF EMPLOYÉS — IMPLIED AUTHORITY—TORTS OF SERVANT.

1. In a suit for damages for an unlawful arrest the burden of proof is on plaintiff to show that the defendant caused, instigated, or authorized the proceeding complained of; and where it is shown that such arrest was made at the instance of defendant's employés the proof must be clear that they had express or implied authority to cause the same to be made.

2. An authority to cause the arrest of persons on a charge of violating a labor contract is not implied in the employment of agents or clerks to run a commissary store, and in connection therewith to collect amounts due by laborers to a construction company.

3. Under Civ. Code, art. 2320, the responsibility of masters is confined to damages occasioned by their servants in the "exercise of the functions in which they are employed," and they are not liable for collateral torts committed by servants while attending to the duties of their employment.

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Winn; Marion F. Machen, Judge.

Action by Amaranta Vara against R. M. Quigley Construction Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Grisham, Mathews & Oglesby, for appellant. Andrews & Hakenyos and Wallace, Moss & Jones, for appellee.

LAND, J. Plaintiff sued defendant company for $2,500 damages for an alleged illegal arrest and imprisonment on a charge of having violated a labor contract, a misdemeanor made punishable by Act No. 50 of 1892, p. 71.

*Rehearing denied March 13, 1905.

The petition charges that said act is repugnant to section 1 of article 14 of the amendments of the Constitution of the United States, and to section 1990 of the Revised Statutes [U. S. Comp. St. 1901, p. 1266], as it attempts to abridge the privileges of citizens of the United States, and to deprive persons of their liberty without due process of law, and as it attempts to enforce the service or labor of persons as peons in liquidation of debts.

Plaintiff alleged that he was a citizen of the republic of Mexico, and that he and 12 other persons were, on October 6, 1903, illegally, wantonly, and maliciously arrested and incarcerated in jail at the instance of defendant corporation, under a warrant issued by a justice of the peace of the parish of Winn. By supplemental and amended petition plaintiff alleged that on the same day he was arrested he demanded a trial, and the charge against him was dismissed for want of prosecution.

Defendant, after pleading the general issue, averred that, if plaintiff was arrested as charged, it was not at the instance of defendant company, or by its authority, or with its knowledge or consent.

There was judgment for defendant, and plaintiff has appealed.

In September, 1903, defendant company had a contract for grading a railroad through the parish of Winn. The work was being done under subcontracts. Quigley, the president, went to San Antonio, Tex., and brought to Winnfield a car load of Mexicans, including the plaintiff, as laborers on the work. The company paid the transportation and traveling expenses of these laborers to their destination. On their arrival they were sent down to work with a Mr. Keough, one of the subcontractors. In about 16 days thereafter plaintiff and 12 others abandoned the work. The next morning they were arrested at Winnfield by a deputy sheriff without a warrant, which, however, was ob-

tained in a very short time from a justice of the peace. Plaintiff and his compatriots were held under arrest until evening, when they were discharged by the justice for want of prosecution. Plaintiff and his companions were not incarcerated in jail or otherwise confined, but were merely detained by the officer.

One Williams, an employé of Keough, the subcontractor, was the active agent in causing the arrest. The warrant was issued on his representations and at his request, without any preliminary affidavit, but the justice swore Williams orally as to the truth of the facts set forth in the warrant.

The justice testified that this was customary with him in administering criminal justice throughout his territorial jurisdiction. The warrant designated the Mexicans by numbers, but did not name the defendant company, or any other person, as a party to the labor contract alleged to have been violated.

While Williams was the active agent, there is no doubt that two employés of defendant corporation aided and assisted him in procuring the arrest of plaintiff and the other Mexicans. One of these employés, C. S. Belden, had charge of the company's commissary at Winnfield, purchased and distributed supplies, and kept the books of the concern at the point. The other employé, F. N. McQuitty, assisted Belden, and seems to have looked after the books and the settlement of claims against the company. The president of the corporation was frequently at Winnfield, and had general charge of the business at that point. The company had local attorneys at Winnfield, and was represented in the state by Judge Andrews, a prominent attorney, residing at Alexandria.

At the time of the arrest the president of the corporation was absent from the state. Neither he nor any officer nor attorney of the company knew anything about the contemplated arrest, nor was it approved or ratified by the company as far as the evidence shows.

It is, however, contended that the defendant is responsible for the alleged tort of their employés, because the prosecution was in the line of their duty, and done in the course of their employment for the benefit of their principal. The argument is that McQuitty had authority to collect all claims due the defendant company, and, believing that plaintiff owed his principal $3.46, advanced on the labor contract, it was his duty to collect this amount, if possible; and therefore he acted within the scope of his employment when he caused plaintiff to be arrested with the view of extorting the payment of said sum of money or of compelling him to return to the service of the defendant company. In support of this contention plaintiff's counsel cite a number of authorities to the effect that the master is liable for an unlawful arrest and imprisonment caused by his servant when acting within the scope of his authority and in the supposed furtherance of his duty towards the master. Conceding the correctness of the general principles of law thus stated, the question remains whether McQuitty acted within the scope of his authority in causing the arrest of the plaintiff. McQuitty was not a general agent, but a clerk employed to keep books, to assist in running the commissary, and in the collection and payment of claims.

Plaintiff's counsel cites Staples v. Schmid (R. I.) 26 Atl. 193, 19 L. R. A. 824, where a salesman in a store erroneously suspected a woman of stealing a package of spoons, and thereupon caused her arrest.

In that case the court said:

"The servant here was servant and custodian in one. Whatever the master might do in the protection of his property, he expected his servant to do in his absence. If the servant had seen the plaintiff take up and secrete the package of spoons in question, and had allowed her to walk away with them unmolested, could any one say that he had not been derelict in his duty to his master? If in the performance of his duty he mistook the occasion for it, or ex-

ceeded his power, or employed an improper degree of compulsion, the mistake and the excess must be answered for by the master."

This decision was bottomed on the fact that the salesman was also custodian of property, and it was his duty to see that none of it was stolen or purloined. Counsel also cited Eichengreen v. R. R. Co. (Tenn.) 34 S. W. 387, 31 L. R. A. 702, 54 Am. St. Rep. 833, where a detective in the employment of a railway company arrested an innocent person on a charge of attempting to pass counterfeit money. Of course, the arrest was within the scope of the detective's employment.

In the case at bar Williams was in charge of the work animals employed on the Keough subcontract. Plaintiff was working under Keough. He and 12 other Mexican laborers objected to the deduction of the cost of transportation and traveling expenses from their wages, and left the camp.

On their arrival at Winnfield, McQuitty telephoned Williams, who came, and the arrest was made. There is no doubt that McQuitty and Belden were privy to the arrest, and promised to pay and did pay the deputy sheriff for his services.

Whether such a proceeding was in the line of their duty is another question. The only basis for the contention that the arrest was within the scope of their employment is the assumption that plaintiff owed defendant company $3.46, and it was their duty to collect it. If such was not the case, as plaintiff contends, the said employés owed no duty to defendant in the premises. If plaintiff did, however, owe defendant said amount, was his arrest on a criminal charge contemplated by their employment?

The Civil Code confines the responsibility of masters to damages occasioned by their servants "in the exercise of the functions in which they are employed." Article 2120.

In the case of Ware v. Canal Co., 15 La. 172, 35 Am. Dec. 189, the court said:

"The distinction is obvious between the willful and deliberate acts of agents amounting to offenses which they commit, even when attending to the functions intrusted to them, and those acts of imprudence, unskillfulness, and ignorance in the discharge of their duties, which may occasion injury to others."

Hence the circumstance that the agent or employé of defendant was discharging certain duties for his principal at the time is of no moment, unless the arrest was made in the exercise of the functions in which he was employed. The servant was employed to keep accounts, to collect and pay bills, and to purchase and sell supplies. The workmen were not under his charge, and their abandonment of the work was a matter for which he was in no wise responsible to his employer. Assuming that the servant had authority to collect the amounts due by plaintiff and other laborers, such employment did not contemplate the collection of such claims by civil or criminal proceedings. It is only such agents of a corporation as are intrusted with the general management of the business that have the implied power to institute and prosecute civil and criminal actions in its behalf. Thompson, Corporations, 5, § 6312. Defendant's servants acted on their own responsibility, and, if they caused plaintiff to be falsely imprisoned, they committed an offense against the criminal laws of the state, for which defendant is not liable in damages.

Judgment affirmed.