**(116 So. 718)**

No. 28690.

**BUCHERT v. SCHUMACHER et al.**

April 9, 1928.

George Piazza, of New Orleans, for appellant.

McCloskey & Benedict, of New Orleans, for appellees.

ROGERS, J. The plaintiff, George H. Buchert, sued the defendants, Emile Schumacher and Carl J. Schumacher, in solido, for damages for a malicious and unsuccessful criminal prosecution based on a charge of malicious mischief. The court below rejected plaintiff's demand, on the ground that no malice had been proved, since the charge was preferred on the advice of the district attorney. From this judgment, plaintiff has appealed.

The salient facts, as disclosed by the record, are as follows, viz.: For a period of five years plaintiff was a tenant of the defendant Emile Schumacher in the premises No. 6048 Patton street in the city of New Orleans. A short time prior to October 1, 1926, he notified his lessor of his intention to vacate the leased premises on October 15, 1926. At about 8 o'clock on the night of October 1, 1926, Emile Schumacher, accompanied by his son-in-law, a Mr. Sherburne, called at plaintiff's residence, and demanded payment by him of $1.34 as his pro rata of a bill charged to Mr. Schumacher for water furnished to No. 6048 Patton street and the adjoining premises. Plaintiff refused to pay the bill, claiming that he was not legally or morally bound to do so. Thereupon a quarrel ensued among the parties, in which Messrs. Schumacher and Sherburne threatened to beat plaintiff, who, after declaring that he was able to take care of them, ordered them to leave his house, which they did. Plaintiff removed from the leased premises on October 15, 1926, and on the next day, October 16, 1926, the other defendant, Carl J. Schumacher, who is a son of Emile Schumacher, injected himself into the controversy by addressing a registered letter to plaintiff, in which he set forth that plaintiff owed his father the water bill, not legally, but morally; that it was not collectible by law, and, furthermore, because of the smallness of the item, "the law procedure would be out of the question." He then proceeded to inform plaintiff that he saw no reason why any one else should settle the moral obligation he was attempting to evade, and advised him that if his remittance was not received by the writer or his father within five days after the receipt of the communication, he would "then refer the entire matter to certain people" who he was sure would not "pass on the matter in as trivial a manner as it appears, solely because of the moral standpoint." He also stated, "I fully appreciate that myself or no one connected with me will receive any gain by taking the step in mind, but in a case of this kind it is the one and proper thing to do."

On October 20, 1926, the water bill not having been paid in the meantime, Carl J. Schumacher, after consulting one of the assistant district attorneys for the parish of Orleans, made an affidavit against plaintiff, charging that on October 13, 1926, he was guilty of malicious mischief by "pulling bathtub away from connection, and pulling bell from front gate, and destroying two trees in the rear yard, all in the premises at 6048 Patton street, property of Emile Schumacher of 4211 S. Prieur street." Plaintiff was not actually arrested, but was instructed to call at the office of the clerk of court and make bond, which he did. Based on the affidavit, the district attorney, under date of November 4, 1926, filed an information against plaintiff. The case was called for trial before the criminal district court for the parish of Orleans on December 10, 1926, and, after the testimony of Carl J. Schumacher was heard, the state abandoned the prosecution, and the accused was discharged. The suit for damages was filed on February 1, 1927.

We think that the judgment of the court below is correct so far as it rejected the demand of the plaintiff against Emile Schumacher. The uncontradicted testimony in the record is that this defendant did not consult the district attorney, was not present when the affidavit was made, and did not instruct or authorize his son to make it. It is true, he was in court in response to a subpœna to appear as a witness, but did not testify, or offer to testify, in the case. This fact, standing by itself, is insufficient to warrant us in holding that Carl J. Schumacher acted as the agent of Emile Schumacher in making the affidavit against plaintiff. The burden of proof was on the plaintiff to clearly show that Carl J. Schumacher had express or implied authority from his father to have the plaintiff arrested. Jackson v. Brady, 140 La. 746, 73 So. 850; Vara v. Quigley Const. Co., 114 La. 261, 38 So. 162. The proof in the record shows the contrary.

But we think the judgment of the court below is erroneous, so far as it rejected plaintiff's demand against Carl J. Schumacher. This defendant stated, as a witness in the present case, he had no personal knowledge that plaintiff had committed the acts set forth in the affidavit, but assumed that he had done so because he was the tenant in the house. The acts, if true, were of the most trivial character. Moreover, the testimony of the witness concerning the alleged damage was vague and unsatisfactory. He testified that the bell attached to the front gate had been recently broken off—apparently from being pulled; that the trees referred to in the affidavit contained punctures made by nails and spikes, the holes being filled with a substance which, without examining it, he thought was lye, because there was a can with a wrapper of red seal lye near the trees, and a horseshoe had been driven into one of the trees; that the bathtub was pulled out from its connection where the drain pipe and the water pipe joined with the bathtub proper, although he was unable to describe the size or the nature of the break, not having looked under the bathtub for that purpose, because, when the cork or stopper was pulled out of the bathtub, the water ran out on the floor. Although he claims that he discovered the alleged damage on the afternoon of October 15, 1926, he admitted that he had not re-examined the premises since that date.

Plaintiff denied that he had broken the bathtub connection, the front gate bell, and that he had punctured the trees. The evidence on his behalf shows that during his occupancy of the leased premises there was neither gong nor handle to the so-called bell on the front gate; that visitors would knock on the side of the house to attract the attention of its inmates. The testimony in the record also shows that the trees referred to in the affidavit were not destroyed, but, on the contrary, were in full bloom at the time of the trial of this case. It is further shown that the bathtub was in good condition on the night of October 14, 1926, when it was used by plaintiff and members of his family. And in this connection it is to be observed that defendants did not place any plumber on the witness stand to testify as to the nature of the alleged damage to the bathtub, or the necessity for, and the cost of its repair. It is also worthy of comment that, in his letter of October 16, 1926, to plaintiff, Carl J. Schumacher made no reference whatever to any of these claims for damage, his sole complaint, at that time, being in regard to the unpaid water bill. In fact, he admitted his reason for writing the letter was to collect "that little water bill that he (plaintiff) was morally obligated to pay, and which he had been paying his part for five years."

It is not clear, from the evidence, whether Carl J. Schumacher called on the district attorney direct, or was referred to him by the affidavit clerk of the criminal district court

in accordance with a rule obtaining in said court that no affidavit will be received there, unless permission is first obtained from the district attorney. It is clear, however, that this defendant failed to inform the assistant district attorney of the dispute concerning the water bill, of the quarrel between his father and plaintiff, and that he, himself, sent a threatening letter to plaintiff.

We find no justification for the actions of Carl J. Schumacher in the prosecution of plaintiff. According to his own admission, he was an intermeddler in a matter in which he was not concerned. His excuse that he acted on the advice of the assistant district attorney cannot avail him. It is manifest that under the facts disclosed plaintiff had not committed any crime whatever. Beyond the bare circumstance that he was in possession of the leased premises, this defendant had no cause for believing plaintiff guilty of the offense with which he charged him. The slightest inquiry would have developed the truth, but defendant made no such inquiry. It is certain that, had he made a full disclosure to the assistant district attorney of all the controlling facts, that officer would have advised him differently. In truth, when all the facts were disclosed by the defendant as the prosecuting witness on the trial of the plaintiff, the assistant district attorney conducting the prosecution abandoned the case.

As was said in Decoux v. Lieux, 33 La. Ann. p. 397:

"We fully recognize the lawful right, and even duty, of the citizen to set on foot criminal proceedings when he has reasonable grounds for believing an offense has been committed, and also the injustice and impolicy of mulcting him in damages merely because the prosecution fails. But equally sacred is the right of every citizen to be protected from the wanton and irreparable injury inflicted by criminal prosecutions for offenses of which he is innocent and of which there was no rational ground for believing him guilty."

It is impossible to conclude, from the evidence in this case, that this defendant honestly believed that plaintiff was guilty of the malicious acts with which he charged him, and, even then, that there existed any reasonable cause upon which to base such belief. On the contrary, the impression it leaves upon the mind is that this defendant caused the arrest and prosecution of plaintiff in order to coerce him to pay the disputed water bill.

■ The rule declaring advice of counsel to be a defense in an action for malicious prosecution supposes always that the party seeking the advice does so in good faith. He will not be permitted to make such advice a cloak for malice or to use it as a shield, if he instigates a criminal prosecution for private gain or for a dishonorable purpose.

"Malice may be inferred from the total want of probable cause.

"Probable cause means reasonable ground of belief, supported by circumstances sufficiently strong to warrant a cautious man in that belief, that the accused is guilty of the offense charged.

"The prosecutor may have been honest, and may have actually believed in the truth of the affidavit made by him, and yet be liable for damages, if he acted without reasonable cause." Decoux v. Lieux, 33 La. Ann. 392.

"The circumstance that advice of counsel was obtained before making the charge, will be no shield, when it does not appear that a full disclosure of all the facts tending to show an *honest* belief, based on *probable* and *reasonable* cause, has been made at the time of consultation." Cointement v. Cropper, 41 La. Ann. 303, 6 So. 127.

See, also, to the same effect, Decoux v. Lieux, supra.

■ The plaintiff, who has never been arrested before, is employed in a clerical capacity by one of the railroads entering the city of New Orleans. While he was not actually imprisoned, he was arraigned, compelled to furnish bail, and to stand trial. He was forced to employ and pay an attorney to defend him. The accusation and trial caused him unpleasant notoriety, inconvenience, and mortification.

The case presents all the elements of re-

sponsibility in damages, which we have concluded to fix at the sum of $200.

For the reasons assigned, the judgment appealed from is annulled so far as it rejects the plaintiff's demand against the defendant Carl J. Schumacher, and it is now ordered that plaintiff, George H. Buchert, have and recover judgment against the said Carl J. Schumacher, defendant, in the full sum of $200 with legal interest thereon from judicial demand until paid, and for all costs of suit; in all other respects, the said judgment is affirmed.