**WHITTINGTON et al. v. WESTERN UNION TELEGRAPH CO., Inc.**

No. 6028.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 5, 1940.

Joseph S. Guerriero, of Monroe, for appellants.

Francis R. Stark, of New York City, and Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

HAMITER, Judge.

Mrs. Whittington, a pedestrian, was injured shortly before noon of December 24, 1937, when a bicycle ridden by L. B. Bell, a messenger in the employ of the Western Union Telegraph Company, collided with her. The accident occurred as she was crossing DeSiard street at its intersection with North Third street in the City of Monroe, Louisiana.

The injured woman and her husband seek damages in this proceeding from said employer, charging in their petition that the accident resulted solely from the negligent operation of the bicycle by the messenger. Defendant denies such negligence and responsibility for the collision and injuries. Alternatively, it avers contributory negligence on the part of the pedestrian.

The case was regularly taken up for trial. After plaintiffs had offered proof in support of their allegations and had rested, the district judge, of his own motion and without permitting defendant to introduce any evidence, rendered judgment rejecting their demands and dismissed the suit. This course was prompted by his belief that they had failed to prove their case.

A motion for a new trial was then filed by plaintiffs. In overruling it the court assigned written reasons for the judgment rendered.

DeSiard is the principal business street of the City of Monroe, and extends generally east and west. It is intersected on the north side, but not crossed, by North Third street, which runs toward the north. A signal light, located on the northeast or the Paramount Theater corner, regulates traffic traveling westerly on DeSiard street. The eastbound traffic on the south side of that street is not governed by any light or other signal and is not required to stop at the intersection.

A lane for pedestrian travel between said northeast corner and the south side of DeSiard street is provided by two white lines marked on the pavement. When struck, Mrs. Whittington was in that lane, proceeding from the north to the south. She had negotiated at least two-thirds of the required distance, and was, therefore, well into the street's south half. The cyclist was traveling easterly.

Only two witnesses testified as to the facts attending the collision. One of these was Elzie Johnson, who, according to his testimony, was on the Paramount Theater corner when it occurred; and the other was Mrs. Whittington. The trial judge, in his written opinion, makes the following observations regarding the occurrence of the accident and the testimony of these witnesses:

"Plaintiff had the right to cross the street at this point with caution. Also the messenger boy, as well as other traffic, had the right to proceed on the south side DeSiard going east with caution.

"One witness for plaintiff, whose testimony I gave little credit, testified that he was standing in front of the theater and saw the accident, and that the messenger boy was making all the speed his bicycle would make. The plaintiff herself testified that she never saw the bicycle until she was struck, and in answering further questions on this point, she emphasized that she never saw the bicycle and was at the time looking the other way.

"Defendants plead contributory negligence, and my view of the matter is that if plaintiff could be said to have proved negligence on the part of the defendant, she also proved negligence on her part."

According to our appreciation of that opinion, he does not hold that negligence on the part of the messenger was not proved. True, he says that little credit is given to the testimony of the witness Johnson, which showed that the bicycle was traveling at an excessive rate of speed; but it does not appear that such proof was or should have been entirely disregarded. The holding was that Mrs. Whittington was contributorily negligent, according to her own testimony; and by reason thereof these plaintiffs cannot recover, even if it

be assumed that negligence of the messenger has been proved.

◼ Contributory negligence on the part of an injured claimant is not presumed. It is an affirmative defense, and the one relying on it to defeat recovery carries the burden of proof.

Mrs. Whittington's uncontradicted testimony shows that when the westbound traffic halted in observance of the red light displayed at the intersection, she entered the pedestrian lane and started across the street. She looked "to see if there was anything coming," and saw no traffic traveling toward the east. After gaining the south portion of the street, and while still between the two white lines and looking to her left, she was hit. It was her further testimony that she heard no ringing of the bicycle bell, did not see the vehicle until the collision, and that she was aware of the fact that no light existed to regulate eastbound traffic.

◼ The finding that Mrs. Whittington was contributorily negligent was based solely on her above-detailed testimony, particularly the statement that she was looking to her left or away from the bicycle when hit. This evidence, in our opinion, does not sufficiently convict her of contributory negligence.

The following extract taken from 2 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, § 1472, has some relevancy to a situation such as the one under consideration:

"A person crossing a street or highway must make reasonable use of all his senses in order to observe an impending danger, and, if he fails to do so and is injured by a passing vehicle, he cannot recover for such injury.

"In crossing at an intersection he is not required to look in every direction during every instant of his progress; and, while it has been baldly declared that reasonable care requires from a pedestrian the constant exercise of the faculty of sight while crossing a street, reason supports the rule, affirmed almost everywhere, that, under the duty of exercising ordinary care, a pedestrian, after he has entered upon a street crossing in a prudent manner, is not required as a matter of law to be constantly on the lookout for danger, 'or to constantly look or listen for approaching motor vehicles, under the penalty that a failure to do so shall be chargeable against him as contributory negligence precluding recovery for injuries which may be sustained through the negligence of a motorist.

"The law does not say how often a pedestrian must look while crossing the street, except that he must look at such a time and place as will reasonably be of some benefit in protecting him and give knowledge of the condition of traffic, and, having looked as he started to cross, a pedestrian is not bound as a matter of law to look again.

"Whether, after looking before starting across an intersection, a pedestrian must continue to look while crossing, depends on many circumstances and conditions, as the amount of traffic, the probability of vehicles approaching, terms of relevant statutes or ordinances, crossing at night with dim lights, standing vehicles, etc., and his negligence is usually one of fact for the jury.

"Under some conditions it may be negligence to fail to look and listen again when reaching the center of the street, especially when the center is marked by a silent policeman, or on reaching the traveled side.

"In some jurisdictions, the failure of a pedestrian crossing a busy city street to look to left and to right on reaching the center is negligence, in the absence of circumstances reasonably diverting his attention."

Mrs. Whittington entered upon the street crossing in a prudent manner, and was occupying that portion of it specifically set aside for pedestrian use. She was not required to look in every direction during every instant of her progress. If a duty devolved on her to look to the right on reaching the center of the street and the traveled side, which question is not here decided, the evidence does not affirmatively disclose that it was not discharged. Possibly she did then look and failed to observe the bicycle's approach because of its asserted excessive speed and the heavy traffic that Christmas Eve provided. It is merely shown by the record that when struck she was looking to her left or in the opposite direction; and at this time she was beyond the street's center and her journey across had almost been completed.

Defense counsel cite and rely on the case of Harper et al. v. Shreveport Ice Cream Factory, Inc., et al. La.App., 162 So. 471,

472, which involved the striking and killing of a pedestrian by an automobile while she was crossing Texas avenue in the City of Shreveport. This court found that, "She had passed over the zone of danger coming from her left and should have been on the lookout for cars coming from her right. There was nothing to obstruct her view of the car approaching with its lights burning. She did not see the car because she did not look." We held therein that she was contributorily negligent, and said that, "It was certainly the duty of deceased, before entering the lane of travel from the south, to have looked in that direction."

A clear distinction exists between the facts of the two cases, and we think the cited authority is not applicable. Here Mrs. Whittington was crossing at the intersection and within the regular pedestrian lane. There decedent was not directly crossing the intersection but was traversing the street diagonally from a point 30 or 40 feet south of it.

This appeal does not seem to present the issue of the messenger's negligence, as above stated. It might be observed, however, that the testimony of Mrs. Whittington to the effect that no eastbound traffic was in view when she looked and commenced her crossing serves to corroborate Johnson's estimate of the speed of the bicycle when the accident occurred.

In our opinion, the judgment appealed from should be reversed and set aside, and the case remanded for further proceedings according to law; and it is so ordered.

The cost of this appeal shall be paid by appellee, while all other costs shall abide the final determination of the case.