This ex delicto action was previously before us for consideration. It involves an accident occurring on DeSiard Street, Monroe, Louisiana, in which one of the plaintiffs, Mrs. William Whittington, was injured when struck by a bicycle ridden by L.B. Bell, an employee of the Western Union Telegraph Company, the sole defendant herein.
The appeal at that time was from a judgment ordering the dismissal of the suit, rendered by the district court immediately after plaintiffs had completed the introduction of their evidence and before any was offered by defendant. The reason assigned for such dismissal was that contributory negligence on the part of the pedestrian, Mrs. Whittington, was shown by plaintiffs' evidence. A different conclusion, after a review of the record, was reached by us; and the judgment was set aside and the case remanded for further proceedings according to law. 193 So. 498.
Subsequently, trial of the merits was resumed in the district court. Evidence was then offered respecting not only the issues of negligence of the cyclist and contributory negligence of the pedestrian but also that created by the specially pleaded defense that the messenger boy was not acting in the scope of his employment when the accident occurred.
After the conclusion of the trial and the case had been submitted on briefs, the district court, without giving written reasons therefor, granted judgment in favor of defendant rejecting the demands of plaintiffs. It is from this judgment that the present appeal is being prosecuted by plaintiffs.
The defense respecting the matter of the messenger's employment is first considered by us, for if it is found to be meritorious the other issues become unimportant. The allegations of the answer presenting it are as follows:
"Now by way of further answering, your defendant avers that on the 24th day of December, 1937, in accordance with its regular rules, custom and practice, it released its messenger and employee L.B. Bell at or near 11:00 A.M. for his usual one hour off for lunch, and that the said L.B. Bell returned to work at the office of your defendant at or near 12:00 o'clock Noon of the same day.
"Your defendant avers that the accident occurred during the lunch hour while the said L.B. Bell was riding his own bicycle, and at a time when, in accordance with your defendant's regular established custom, practice and contract of employment, the said L.B. Bell was no longer on business of your defendant and your defendant had no control whatsoever over the said L.B. Bell.
"Your defendant avers that the said L.B. Bell performed no duties whatsoever for your defendant during the lunch hour, nor had he any to perform, and that the accident occurred at a time when the said L.B. Bell was not in the course or scope of his employment and because of such fact there can be no liability or responsibility whatsoever on the part of your defendant."
It is the settled law of this state that the master is liable for the damage occasioned by the torts of the servant only when committed while he is acting within the scope and course of the employment. Civil Code, Article 2320; Vara v. R.M. Quigley Construction Company, 114 La. 261, 38 So. 162; Valley v. Clay,151 La. 710, 92 So. 308; Tinker v. Hirst, 162 La. 209,110 So. 324. And, as a general rule, there is no responsibility on the part of the master for injuries caused by the servant while going to and from his place of employment, including trips for his meals, unless there are circumstances disclosing that the interests of the master were at the time being served. Cado v. Many, La.App., 180 So. 185; Kennedy v. Louisiana Stores Company, La.App., 186 So. 860; Gallaher v. Ricketts, La.App., 191 So. 713. *Page 329 
The cyclist Bell, at the time of the mishap, was attired in a complete Western Union Company uniform, and, admittedly, in the employ of defendant. These factors create a presumption, but one of the inconclusive and rebuttable kind, that he was then acting in the course and scope of his employment. Middleton v. Humble, La.App., 172 So. 542; Kendricks v. Lewis, La.App., 175 So. 484.
The presently considered accident occurred, as is very definitely shown by the evidence, a few minutes past 11:30 o'clock of the morning of December 24, 1937. Almost all of the witnesses gave testimony to this effect; particularly, a Postal Telegraph boy, Malcolm Horne, witnessed the accident, and immediately following its occurrence went directly to the office of his employer, two and one-half blocks away, and deposited a telegram that he had picked up. The time of this deposit, as is required by telegraph regulations, was stamped on the message; it was then 11:32 A.M. o'clock.
Bell, the bicycle rider and defendant's employee, testified that he ceased his work around 11 A.M. o'clock, and shortly thereafter left defendant's office, located on the corner of South Grand and DeSiard Street, to go to his home in the 2700 Block of DeSiard Street for lunch. After experiencing the accident he continued to his destination, ate lunch, and then returned to the office. During this lunch period he carried no telegrams for delivery and received none to be dispatched; in other words, he performed no duties for his employer.
The testimony of one Charles E. Fields, who was in defendant's employ on the occasion of the mishap but not when the trial took place, was that he and Bell departed from the Western Union office together. Both were then off duty and were going to their respective homes for lunch.
The chief delivery clerk of defendant in its Monroe office, and the person in charge of the messenger boys on December 24, 1937, was C.S. Todd. This witness could not state of his own knowledge when Bell went to lunch on the named date. By reason of the company's time record, however, which was produced and filed in evidence without objection, he was positive that Bell was off duty on the collision's occurrence. This record disclosed that the messenger worked a total of nine hours on that date; that he reported at 8 A.M., was off for lunch from 11 A.M. until 12 noon, and completed the day's assignments at 6 P.M.
On the other hand, one Cotham Haddad, called by plaintiffs as a witness, testified that he dispatched some Christmas greeting telegrams through the facilities of defendant on the morning of December 24, 1937; that the messenger boy was late in calling for them, such arrival being between 11:30 A.M. and 12 noon; and that the reason given for the tardiness was that the boy's bicycle had struck a lady. When asked to identify Bell as the messenger who picked up the telegrams, the witness stated: "It has been a long time and I don't remember."
Bell recalled his having gone to Mr. Haddad's place of business on that date, but stated that his visit there was earlier in the morning and before the accident's happening. He denied having made the statement attributed to him. In view of this denial and of the circumstances which we now mention, the testimony of Mr. Haddad has no probative value.
The holiday messages sent by such witness, which are in the record, bear the notation "1937 Dec. 24 A.M. 11:22." Business or regular telegrams, as the evidence discloses, are stamped by the time clock immediately on their arrival in defendant's office, but holiday messages, being of less importance, receive the stamp when convenience permits and sometimes an hour after their arrival. When a message is so labeled, however, the exact time then existing, according to a Western Union clock, appears thereon. These messages, therefore, bearing the time 11:22 A.M. o'clock, could not have been picked up after 11:30 o'clock or subsequent to the accident's occurrence. Then, too, Mr. Haddad has sent similar Christmas greetings yearly during a period of about six years; and his attention was not directed to these particular messages until almost three years after their being sent.
The only other evidence relied on by plaintiffs touching the issue under consideration is that given by a witness named Elzie Johnson. It is couched in the following questions and answers:
"Q. Did you see him drop anything at the time he fell off his bicycle? A. Yes, sir.
"Q. Do you know what he dropped? A. It looked like a telegram. *Page 330 
"Q. Do you know how many telegrams he dropped? A. Looked like three or four to me."
The dropping of telegrams is denied by Bell and by another person who saw the accident. Furthermore, the trial judge, as he stated, "gave little credit" to the testimony of the witness Johnson; and, because of numerous patent inconsistencies contained therein, we are likewise not greatly impressed with it.
In our opinion, the presumption existing in plaintiffs' favor was not aided by the testimony of the witnesses Haddad and Johnson, and it was adequately rebutted and overcome by the evidence introduced by the defense. Consequently, we must hold that the employee Bell was not acting within the course of his employment when Mrs. Whittington was struck.
The judgment is affirmed.