**BARRIOS v. YOARS (three cases).***
**ZERINGUE v. SAME.**

Nos. 16871–16874.

Court of Appeal of Louisiana.   Orleans.

Oct. 31, 1938.

Theodore H. McGiehan, of New Orleans, for appellant.

*Rehearing denied Dec. 12, 1938.

W. J. & H. W. Waguespack, of New Orleans, for appellees.

JANVIER, Judge.

These cases are consolidated and, since most of the facts involved in all of them are identical, we deem it expedient to render one opinion.

Each of the plaintiffs is a trapper and each, for years prior to the events herein recited, had obtained his principal income by trapping muskrats on marsh lands situated between the mouth of the Mississippi River and the City of New Orleans. For some time there had been a controversy between the land-owners, including Fred Yoars, the present defendant, and some of the trappers, including the plaintiffs, concerning the rights of the plaintiffs to trap rats on lands of the land-owners. For the purposes of this case it may be conceded that Yoars was the owner of all of the marsh lands on which these various plaintiffs were at that time engaged and it may also be conceded that the said Yoars had posted notices at conspicuous and numerous places warning all persons against trapping or otherwise trespassing on the said lands. The lands were not fenced, or otherwise enclosed, and no crops or fruits were grown thereon and they could not be considered plantations or farms.

On February 26, 1934, in the matter entitled State v. Hebert et al., 179 La. 190, 153 So. 688, the Supreme Court of Louisiana held that it is not a violation of the trespass statute of this state— Section 822 of the Revised Statutes, as amended by Act No. 162 of 1910—to "trespass" upon such lands since the said statutes refer only to those who " * * * shall enter upon any plantation or farm, or upon any grounds upon which crops or fruits of any kind are grown, or into any enclosure without the permission of the owner * * *". Without discussing what may have been the civil rights of the land owners involved, the court held that no criminal prosecution would lie, saying:

"* * * But the statute does not make such trespassing a penal offense, unless the land trespassed upon is a plantation or farm, or land on which crops or fruits of some kind are grown, or is inclosed by some kind of fence, either artificial or natural. The fact that the land fronts on a stream, either navigable or non-navigable,

does not make it an inclosure. And the proviso in the statute shows plainly that the mere posting of the land with warnings against trespassing is not enough to make it an inclosure, or subject to the provisions of the statute."

When this decision was rendered, the association or "union" to which the various plaintiffs here belonged caused to be printed various copies thereof and distributed them throughout that section. It is abundantly shown that Yoars was well acquainted with the decision and well knew that, as a result of it, no criminal prosecution for trespass against these plaintiffs would lie. In fact, it is shown that one of the printed copies of the said decision was handed to him before he took the various steps on which these suits are based. On November 20, 1934, which was the day on which the trapping season for that year commenced, Yoars, though he knew of the decision which had been rendered many months earlier on February 26th of that year, caused the filing of criminal charges of trespass against and secured the arrest of Claiborne Zeringue, Sidney Barrios and Edward Barrios, who, as a result of the arrest, were taken before a justice of the peace. Subsequently, on November 26, 1934, he again instigated criminal proceedings against the said parties and again caused all of them and also Camille Barrios, to be taken into custody and again brought them before the justice of the peace, where they were required to furnish bond in order to secure their temporary release pending trial. Later, basing his action on the decision of the Supreme Court in the Hebert Case, the District Attorney for the Parish of Plaquemines dismissed all of those charges. Finally, Yoars, realizing that his only recourse would be to resort to civil proceedings, filed in the United States District Court a petition for an injunction and on November 30, 1934, secured a restraining order. After obtaining this preliminary injunction, Yoars, accompanied by a deputy sheriff of the parish, again visited the camp where the plaintiffs were living and, representing himself and the said deputy sheriff as officers of the United States, again took them into custody and brought them into the office of the United States Marshal in New Orleans. No charges were made against them and it is not shown that there had been any "trespass" committed by any of them since the issuance of the restraining order.

Since no charges were pending against them the United States Marshal released them from custody.

They bring these suits against Yoars seeking recovery of damages for malicious prosecution and false imprisonment and Camille Barrios also claims damages for personal injuries and mental anguish which he sustained as a result of the fact that on the afternoon of November 25, 1934, while Barrios was in the act of "running" his traps in the marshes, his pirogue, which he had left at the edge of the navigable stream nearby, and his dry clothes, which were in the pirogue, were taken by the said Yoars with the result that he, in order to reach his camp more than five miles away, was required to travel over the marshes and cross intervening waterways. Claiborne Zeringue was forced to leave his wife and sick child at camp and the child afterwards died, and it is contended, therefore, that the mental anguish which he suffered aggravated the offense against him.

Camille Barrios claimed of defendant the sum of $9,500, Claiborne Zeringue claimed $8,500, Edward Barrios claimed $8,500, and Sidney Barrios claimed $8,500.

At the request of defendant the cases were tried by jury and verdicts rendered as follows: For Camille Barrios, $750, for Claiborne Zeringue, $425, for Edward Barrios, $200, for Sidney Barrios, $200, and, from judgments based on these verdicts, Yoars has appealed.

We have recited the above facts as though there was no controversy over them. Many of them are denied. But the evidence is so overwhelming that we believe it unnecessary to refer in detail to it.

So far as the claims for malicious prosecution and false imprisonment or arrest are concerned, defendant seems to rely not on the defense that he acted with probable cause and without malice, but on his theory that, in spite of the decision of the Supreme Court and although no prosecution at that time would lie for acts such as plaintiffs committed, nevertheless they were, technically, "trespassers" and, therefore, should be barred from civil recovery. But the law is well settled that, where one institutes against another criminal prosecution and there is an acquittal, if the person who instigated the prosecution is to avoid liability for damages he must do so on the ground that he acted with probable cause and without malice.

It is true that, where there has been a trial which has resulted in an acquittal, the burden of showing that there was malice and that there was no probable cause for the prosecution is placed upon the plaintiff in the suit for damages for malicious prosecution:

"We do not know just how far she was vindicated by the evidence offered in the criminal prosecution. It may be that the proof was lacking only in the matter of a reasonable doubt. The fact that the woman was acquitted is not, of itself, proof that the prosecution was inspired by malice, or was without probable cause. Grant v. Deuel, 3 Rob. 17, 38 Am.Dec. 228; Wells v. Johnston, 52 La.Ann. 713, 27 So. 185; Sandoz v. Veazie, 106 La. [202] 216, 30 So. 767; Covington v. Roberson, 111 La. [326] 336, 35 So. 586; Sundmaker v. Gaudet, 113 La. [887] 890, 37 So. 865." Washington v. Lane Cotton Mills Co., 154 La. 910, 98 So. 416.

"In order to maintain an action of this kind, it is necessary that plaintiff show that defendant, in causing the arrest and prosecution, was actuated by malice and that he acted without probable cause. The burden is upon plaintiff to prove both malice and absence of probable cause.

"The authorities on this point are so numerous that we think it unnecessary to refer to them. We do, however, cite two leading cases by our own Supreme Court, viz., Barton v. Kavanaugh, 12 La.Ann. 332; and Estrada v. Kreeger Store Incorporated, 147 La. 291, 84 So. 786. See, also, 'Malicious Prosecution,' 38 C.J. 386, and 18 R.C.L. pp. 28, 33." Melson v. Calhoun, 10 La.App. 492, 120 So. 115, 116.

This is because, where there has been an actual commitment by a committing magistrate and then a trial, the acquittal may result from the fact that the proof does not show guilt beyond a reasonable doubt and that there nevertheless may have been probable cause for the defendant to believe in the guilt of the accused. But the authorities have firmly established the rule that, where the committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, there is a presumption of want of probable cause, with the result that in a suit for malicious prosecution based on that discharge the burden of showing that he acted on proba-

ble cause and without malice is upon the defendant:

"* * * The acquittal of the plaintiff by the Justice of the peace which was shown by the plaintiff raised the presumption of want of probable cause for the arrest; and want of probable cause is itself presumptive evidence of malice and abides against the defendant until rebutted." Sing v. Freed, 1 Orleans App. 44.

The reason for this is that it is only where there is a total absence of reason to believe in the guilt of the accused that the committing magistrate or the prosecuting officer is authorized to discharge the accused. Bornholdt v. Souillard, 36 La.Ann. 103; Brown v. Vittur, 47 La.Ann. 607, 17 So. 193.

But, wherever may lie the burden of proof, the facts here leave possible no conclusion other than that defendant, Yoars, acted without probable cause and with malice. That he knew of the decision of the Supreme Court, there can be no doubt, and his action upon being handed a copy of it strongly evidenced malice. Likewise, his treatment of the pirogue and clothes of Camille Barrios can be looked upon in no way other than as evidencing ill feeling and a desire to injure.

The reports of the Supreme Court and of the Courts of Appeal are filled with cases firmly establishing the rule that, where there is an acquittal, he who has instigated the prosecution is liable unless he acted with probable cause to believe that the prosecution was justified and unless, also, he acted without malice.

We pass to a consideration of the evidence concerning the charge that the plaintiffs were falsely arrested or imprisoned. The distinction between a malicious prosecution and a false arrest or imprisonment is clearly set forth in De Bouchel v. Koss Construction Co., 177 La. 841, 842, 149 So. 496, 497, in which the Supreme Court said:

"There is a marked distinction between actions for false imprisonment and those for malicious prosecution. In false imprisonment, the arrest is made either without any legal process or warrant or under a warrant void and null upon its face. In malicious prosecution, the proceedings are had in pursuance of legal process maliciously and wrongfully obtained. As Lord Mansfield says, 'The difference is this: The wrongdoer in making the unlawful arrest or causing it to be made, takes the law in his own hands and acts without a warrant from a court or magistrate while the man who instigates a malicious prosecution puts the machinery of criminal law into operation, causing a warrant to issue and the arrest under the warrant.'"

Practically the same statement had already been made by the Supreme Court in Hunter v. Laurent, 158 La. 874, 104 So. 747, 750:

"'Although not always observed, the distinction between malicious prosecution and false imprisonment (or false arrest) is fundamental. But briefly, the essential difference between a wrongful detention for which malicious prosecution will lie, and one in which false imprisonment will lie, is that in the former the detention is malicious but under the due forms of law, whereas in the latter the detention is without color of legal authority.' 25 Corp.Jur. 444, 445, § 3."

In a suit for damages based on false arrest or imprisonment the good faith of the person who causes the arrest is not of importance because the only question involved is whether there was legal authority for the arrest. It is obvious that there was none here, for, when the plaintiffs were apprehended and taken to New Orleans, Yoars well knew that no charge had been made against them, that no warrant had been issued for them and that the arrest had not been made under authority of court.

We think that, under the circumstances, the awards were not excessive. In the cases of Edward Barrios and Sidney Barrios, where there were no aggravating circumstances, $200 was awarded each. Unquestionably the mental anguish sustained by Claiborne Zeringue justified a considerable increase in the award made to him, and, likewise, the mental anguish suffered and fear of being required to spend the night in the marshes justified the additional award in the case of Camille Barrios.

It is therefore ordered, adjudged and decreed that the judgment of the trial court in favor of Camille Barrios in the sum of $750, with legal interest from judicial demand, be and it is affirmed at the cost of appellant.

It is further ordered, adjudged and decreed that the judgment of the trial court in favor of Claiborne Zeringue in the sum

of $425, with legal interest from judicial demand, be and it is affirmed at the cost of appellant.

It is further ordered, adjudged and decreed that the judgment of the trial court in favor of Edward Barrios in the sum of $200, with legal interest from judicial demand, be and it is affirmed at the cost of appellant.

It is further ordered, adjudged and decreed that the judgment of the trial court in favor of Sidney Barrios in the sum of $200, with legal interest from judicial demand, be and it is affirmed at the cost of appellant.

Judgments affirmed.