SARGENT v. POLAR BAR ICE CREAM CO., Inc., et al.

No. 17223.

Court of Appeal of Louisiana. Orleans.
June 4, 1940.

Rehearing Denied June 13, 1940.

Writ of Certiorari Denied July 18, 1940.

Robert. E. O'Connor and Borris Burk, both of New Orleans, for appellant.

Ernest J. Robin, of New Orleans, for appellees.

JANVIER, Judge.

This is a suit for damages for malicious prosecution. The defendants are the Polar Bar Ice Cream Company, Inc., and John C. Selway, the manager of its peddlers' sales department.

It is charged by plaintiff, Lee E. Sargent, an ice cream peddler, that Selway, in his said capacity, with malice and without probable cause for believing in his guilt, caused his arrest and charged him with petty larceny. It is also alleged that petitioner subsequently was acquitted.

Defendants admit that they were responsible for Sargent's arrest, but they aver that they had good reason to believe in his guilt and that there was no malice involved in their action. By reconventional demand defendant, Polar Bar Ice Cream Company, Inc., claims of plaintiff $10.35, alleging that amount to be due by him for "merchandise taken out by him * * * and for which he has failed to account".

In the court below, on the first trial, there was judgment for plaintiff for $200 against both defendants and, on the reconventional demand, there was judgment in favor of the Polar Bar Ice Cream Company and against Sargent in the sum of $10.35. But on application of defendants, a new trial was had, after which judgment was rendered for defendants dismissing plaintiff's suit and, on the reconventional demand, in favor of Polar Bar Ice Cream Company, Inc., and against Sargent in the sum of $9.35. Sargent has appealed.

The Polar Bar Ice Cream Company, Inc., is engaged in the distribution of an ice cream confection which is retailed through peddlers to the general public on the streets and particularly at athletic and other events at which the public congregates. Selway is manager of the peddlers' sales department. Sargent, who apparently was well known in that particular trade, at various times had peddled the products of other companies engaged in the same kind of business, and, at intervals during the three years preceding his arrest, had peddled the product of the Polar Bar Company. The company, according to its custom, provided him with a tricycle to which was attached an insulated ice-box, in which, by means of what is called "dry ice", this ice cream might be kept hard and salable.

The company contends that it did not sell these confections to Sargent and to the other peddlers because they had no financial standing and no credit, but that it consigned its product to them to be sold by them for its account and with the understanding that, at the end of each day, each peddler must return his tricycle and the money collected for that day's sales, out of which money each might then retain that share which had been earned by him.

Sargent asserts that, on the contrary, the contract was not one of consignment, but was an outright sale on credit for the period of one day, with the legal result that failure to turn over the money collected in any one day did not amount to a criminal conversion or embezzlement, but only involved civil liability for debt for the purchase price of the product.

On the morning of December 22, 1938, Sargent obtained a tricycle and a full supply of ice cream bars, but on that evening he did not return to the office of the company, and, in fact, no official of that company, nor anyone else connected with it—so far as the record shows—heard of him or from him until December 28th, six days later. On that day, fearing that he had stolen the tricycle and either the ice cream bars or the money for which they had been sold, Selway called on the bicycle theft department of the city police for assistance in recovering the tricycle. He made no charge against Sargent, but merely sought advice as to the proper course to pursue. He was advised to locate Sargent and to demand the return of the tricycle. Sargent was not found at the address which he had given to the company, but his "landlady" advised Selway of his correct address and Selway called at his home, but found that he was not in. On the next day, December 29th, Selway called again and this time he found Sargent, who readily surrendered the tricycle and who agreed that he was indebted to the company, but disputed the correctness of the amount claimed. He promised to call at the office the next day to settle the account, but did not do so. On January 2, 1939, while Sargent, at the entrance to the stadium in which a large football game had been played, was engaged in selling the product of a rival company, Selway caused his arrest, advising police officers who were present that at one of the precinct sta-

tions in this city there was a warrant for him based on his failure to account for $10.35 claimed by the company as the amount due it for money collected by him for its account. Sargent was taken in to custody, placed in a jail cell, where he remained for about an hour and a half, and was taken to another station and was then released on bond. It was discovered that no charge had previously been made against him and Selway then caused him to be charged with petty larceny. On the next morning his bondsman surrendered him, he was tried and acquitted, and this suit has resulted.

■ Of course, the acquittal does not itself entitle him to recovery, for there can be no recovery of damages for malicious prosecution unless it appears that the said prosecution was instigated by malice and was not based on information or facts sufficient to justify a bona fide belief in the guilt of the accused—in other words, unless there was malice and no probable cause for believing in his guilt. Sundmaker v. Gaudet, 113 La. 887, 37 So. 865; Washington v. Lane Cotton Mills Company, 154 La. 910, 98 So. 416; Barrios v. Yoars, La.App., 184 So. 212.

It seems evident that under no circumstances could a charge of petty larceny have been sustained. There is no doubt that Sargent had properly and legally come into possession of the merchandise and of the money for which he sold it, and it necessarily follows that, if he had been guilty of any crime at all, it must have been embezzlement and this only if his contract was not one of sale, but one of consignment. ·

■ However, we attach no significance to this because, if Selway had probable cause for believing Sargent guilty of a crime, we do not think it would make any difference in a suit of this kind that he had made a charge of larceny when, technically, the charge should have been embezzlement.

■ But we do think it important that no charge was made until Sargent was found several days later and at a football game, selling the merchandise of a rival concern. Selway had found out where Sargent lived and made no further effort to contact him. In fact, on December 29th, he agreed that Sargent might come in on the next day and pay the amount which he owed. Though Sargent did not come in as he promised, he says that he did appear a day or so later and again disputed the correctness of the claim of the company. This is denied by Selway, but we think that the record shows that Selway, by his conduct, agreed that Sargent might have additional time to pay such amount as he owed.

However improper or illegal may have been the original action of Sargent in retaining the money, in extending him time to settle the account Selway converted the matter into a simple debtor and creditor transaction and after that he must have known that he could not invoke criminal proceedings. Then, too, we are impressed by the testimony of Mr. Russell, president of defendant company, to the effect that, on other occasions, he had caused the arrest of other persons for not settling with his company.

There can be no doubt of the right of an official, who is in good faith and acts without malice, to cause the arrest of another for a crime of which he believes the other guilty, but, when there is involved a transaction which creates an obligation at least closely resembling merely a civil debt, we should be careful not to permit criminal process to be substituted for civil proceedings.

After a review of the record, we are convinced of two things:

First, that a criminal charge was made on grounds which were most doubtful and under circumstances which indicate that their object was, in reality, the collection of a civil debt, and,

Second, that the fact that Sargent was found selling the goods of a rival played no small part in the reasons which prompted Selway to cause his arrest.

When we come to consider the amount to be awarded, we find the following facts:

Sargent was arrested while he was selling ice cream just outside the stadium in which a large football game had been played, but it is very obvious that there was no crowd congregated at that particular point, and the police officer who made the arrest testifies that there was no unusual noise or disturbance caused by the arrest. He says, also, that there was no violence of any kind and that he permitted Sargent to complete the sales which he was negotiating with two customers. Sargent was placed in a patrol wagon and taken to the precinct station, where he was put in a cell, in which he remained for one and one-half hours. He was then transferred to an-

other precinct station, where he then was not put in a cell but where he was required to wait in the office of the clerk for about fifteen or twenty minutes, when Selway appeared to prefer the charge. He then was placed under bond, but on the following morning his bondsman surrendered him and Sargent was again taken into custody for a very short time. He was then tried and acquitted. He stated that he had never been arrested before and that "being arrested and put in prison was one of the biggest horrors in my life. That was the first time I was ever locked up".

■ An examination of various other cases involving suits for damages for malicious prosecution shows that from $100 to $250 has been allowed, depending upon the circumstances of each particular case.

In Barrios v. Yoars, supra, two trappers who had been charged with trespass sued for damages. There were no aggravating circumstances and we held that they were entitled to $200 each.

In Buchert v. Schumacher, 166 La. 111, 116 So. 718, the Supreme Court held $200 to be a proper award where the plaintiff had been charged with malicious mischief. He had never been arrested before and, in fact, was not actually imprisoned, but was arraigned and compelled to furnish bond, to go to trial and to employ and pay for an attorney.

In Campbell v. Deville, 163 La. 575, 112 So. 491, the Supreme Court held $250 to be an excessive award where the plaintiff was never actually arrested, although she was a very frail woman, in delicate health, nervous and excitable. The court reduced the award to $100.

In Hunter v. Laurent, 158 La. 874, 104 So. 747, an award of $200 was held to be adequate, though plaintiff remained in jail for eight or ten hours and was required to furnish bond.

Taking all the circumstances into consideration and considering the above-mentioned cases, we think an award of $150 should be adequate here.

■ When we consider the claim in reconvention, we find it established that Sargent was indebted to the Polar Bar Ice Cream Company, Inc., in the sum of $9.35, and, of course, there should therefore be judgment in reconvention for the company and against him for this amount.

It is therefore ordered, adjudged and decreed that the judgment appealed from, insofar as it rejects the demand of plaintiff, be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff, Lee E. Sargent, and against Polar Bar Ice Cream Company, Inc., and John C. Selway, defendants, jointly, severally and in solido, in the full sum of $150, with legal interest from judicial demand.

And it is further ordered, adjudged and decreed that the judgment appealed from, insofar as it runs in favor of Polar Bar Ice Cream Company, Inc., and against Lee E. Sargent, defendant in reconvention, be and it is affirmed.

Defendants to pay all costs.

Reversed in part; affirmed in part.