45 So.2d 531 (1950)
BUISSON
v.
PRESTIA.
No. 19345.
Court of Appeal of Louisiana, Orleans.
April 10, 1950.
Robert J. Pitard, New Orleans, for appellant.
Harry R. Cabral and William M. Campbell, New Orleans, for appellee.
REGAN, Judge.
Plaintiff, Harry Buisson, initiated this suit against the defendant, Joseph Prestia, for malicious prosecution, in the amount of $1,758.00 for damages, incurred when plaintiff allegedly suffered "humiliation, mental anguish, annoyance" and his name was defamed by virtue of an affidavit filed by defendant in the Recorders' Court of the City of New Orleans, charging plaintiff with "petty larceny".
Defendant filed an exception of vagueness to plaintiff's petition which was overruled by consent and, subsequently, in effect, answered by way of a general denial and specifically pleaded that defendant "made these charges on the advice of the Clerk of the Recorders' Court and that he made the charges with just and probable *532 cause and without malice". Defendant further answered and maintained that he believed that plaintiff had taken certain kitchen utensils, valued at $11.25, from his apartment.
From a judgment in favor of plaintiff awarding him damages in the amount of $758.00, defendant prosecutes this appeal.
The record reveals that plaintiff, a provisional police officer, rented, presumably from month to month, a furnished apartment from defendant, on September 11th, 1946, the contents of which were inventoried and the correctness thereof verified by plaintiff's signature. Plaintiff remained in the apartment until July 11th, 1947, at which time, he moved. Defendant being absent from the City, plaintiff surrendered the keys to defendant's sister. On or about July 15th, 1947, defendant returned to the City and a short time thereafter, the exact time being disputed by both litigants, the defendant caused the contents of the apartment to be reinventoried and allegedly ascertained that kitchen utensils, valued at $11.25, were missing from the apartment. While the record is vague, it appears that defendant experienced some difficulty in locating plaintiff's address, and approximately two weeks elapsed before he called at plaintiff's home on July 23rd, 1947, between seven and eight o'clock p. m. and attempted to effect a settlement. Defendant's version of this conversation is to the effect that plaintiff told him "if you don't get away from here, I'm going to put you in jail". Plaintiff's version is that he was not interested and advised defendant to leave. In any event, the conversation abruptly terminated and defendant proceeded to the Third Precinct Police Station, where he complained to Sergeant Reilly that plaintiff "had moved from his apartment and that a number of kitchen utensils were missing", and that he had attempted to discuss the matter with plaintiff without success. Thereupon, Sergeant Reilly, apparently endeavoring to amicably effect a settlement between plaintiff and defendant, sent defendant, accompanied by two police officers, to plaintiff's home. The record is vague as to the nature of the conversation that ensued on this occasion, however, it does reflect that defendant and the two police officers, about one-half hour later, returned to the Third Precinct, and plaintiff, accompanied by his wife, voluntarily followed in his own car. Sergeant Reilly testified "they more or less turned it over to me to handle. It seemed that they could not handle it outside or come to any agreement. So I heard both sides of the story". Sergeant Reilly stated that defendant wanted plaintiff charged with the theft of the kitchen utensils, which he refused to do and advised defendant to see his lawyer or consult the affidavit Clerk of the Recorders' Court. Sergeant Reilly terminated his testimony by stating that plaintiff was not placed under arrest and was detained at the Third Precinct "only to the extent of my interview with him. I would say ten or fifteen minutes".
The following morning, on July 24th, 1947, defendant proceeded to the Municipal Court and there, in the presence of the Deputy Clerk, Louis E. Nelson, swore out an affidavit, charging plaintiff with petty larceny of kitchen utensils valued at $11.25. Plaintiff was subsequently arraigned and placed under bond. Defendant contends that he made this charge against plaintiff on the advice of the Deputy Clerk, Nelson, which contention is vehemently denied and disputed by Nelson. Subsequently, the charge of petty larceny was heard by the judge of the Municipal Court, and defendant testified (a transcript of the testimony is contained in the record) "I can't say he stole them" and thereupon the case was dismissed by the Court.
The only question posed by virtue of the pleadings herein is one of fact and that is whether defendant, in initiating the charge of petty larceny against plaintiff in the Municipal Court, was actuated by malice and whether he acted without probable cause?
As to what constitutes probable cause in the sense in which the term is used in actions for malicious prosecution, many definitions, differing more or less rhetorically, or by virtue of a difference in the association of ideas, are to be found in the decisions of our Courts. A definition possessing the characteristics of mathematical *533 precision, or sufficient to comply with every conceivable test, would be impossible to supply, inasmuch as the comprehensive legal idea manifested by the terminology "probable cause" is not to be gathered from a mere definition. However, notwithstanding the different illusive and shaded words and phrases used in many judicial definitions, there appears to be a fundamental accord among them all to substantiate the assertion that the yardstick, or standard of conduct, for initiating or pursuing any civil or criminal proceeding, is that of a reasonable or ordinarily prudent man placed in the same situation as the defendant. That is, if a reasonable man would have believed and acted, under the circumstances, as the defendant did, there would be probable cause, otherwise not.
Assuming arguendo, that the kitchen utensils in question were missing from the apartment when defendant made an inventory approximately two weeks after plaintiff's departure, and conceding that civil liability may have attached to plaintiff, we can then pass to the consideration of whether defendant, in view of these assumptions, and the chain of circumstances that followed, had probable cause for his subsequent actions in charging plaintiff with petty larceny.
The record reflects that defendant, on or about July 23rd, 1947, between seven and eight o'clock p. m. proceeded to plaintiff's home to discuss the missing kitchen utensils and thereupon a dispute ensued which afforded defendant no satisfaction. Leaving plaintiff's home, defendant proceeded to the Third Precinct Police Station where he related his story to Sergeant Reilly. Following this narration plaintiff was requested to come to the Third Precinct at which time Sergeant Reilly "heard both sides of the story", and advised defendant that there was not sufficient evidence for the police to charge plaintiff with the theft of the kitchen utensils, and that he should see his lawyer because, in his opinion, the former occupant of the apartment, was civilly but not criminally responsible for the allegedly missing articles. Defendant, through his persistence, conveyed to Sergeant Reilly that he was dissatisfied with the results obtained through the police, and defendant was then advised to consult the "Affidavit Clerk" of the Municipal Court, which defendant did and which resulted in the filing of a charge against plaintiff of petty larceny.
It occurs to us that an ordinarily reasonable and prudent man would not have initiated these proceedings in the Municipal Court, especially after defendant's interview with Sergeant Reilly, and it is at this point, if not before, that defendant ceased to act with probable cause in attempting to charge plaintiff with petty larceny.
As to what constitutes malice, it is not necessary to prove any actual spite, ill-will or grudge for one having no ill-will against another may, notwithstanding, be guilty of the malicious prosecution of him.
That the defendant was actuated by malice is also an inference which may be drawn from proof of the lack of probable cause.
In our opinion the filing of an affidavit in the Municipal Court, charging plaintiff with petty larceny, for the purpose, as admitted by defendant, of compelling the person prosecuted to pay a debt or to turn over property in his possession, constitutes a malicious act such as will support an action for malicious prosecution.
The reports of the Supreme Court and the Courts of Appeal are replete with cases establishing the rule that, where there is an acquittal, he who has instigated the prosecution is liable unless he acted with probable cause and without malice. In view of the innumerable cases enunciating this rule of law, we think it unnecessary to cite them.
In our opinion the award of damages of $758.00 in this case was excessive. We realize, of course, that it is difficult to place a monetary value upon the suffering. humiliation and embarrassment sustained by a plaintiff and we have, therefore, given consideration to several cases in which awards have been made for humiliation and embarrassment caused by malicious prosecution or false imprisonment.
*534 "In Sargent v. Polar Bar Ice Cream Co. Inc., La.App. 196 So. 541, we allowed only $150, but there the plaintiff was arrested without any unusual noise or disturbance, and there was no crowd congregated. In fact, plaintiff was permitted to complete the sales which he was negotiating with two customers. He was put into a cell for an hour and a half and then transferred to another precinct station where he was not put into a cell, and where he remained only abount fifteen or twenty minutes before making bond and being released.
"In Barrios v. Yoars, La.App., 184 So. 212, there was no aggravating circumstances and no actual incarceration, and $200 was allowed. In Buchert v. Schumacher, 166 La. 111, 116 So. 718, $200 was allowed, but there was never any actual arrest. In Campbell v. Deville, 163 La. 575, 112 So. 491, only $100 was allowed, but there was only a constructive arrest. The plaintiff was never taken into custody. In Hunter v. Laurent, 158 La. 874, 104 So. 747, only $200 was allowed, but it was shown that the plaintiff was not arrested by police. He heard that a warrant had been issued for his arrest and he voluntarily surrendered and remained in custody from eight to ten hours when he was released on bond." Dauphine v. Herbert, La.App., 37 So.2d 829, 832.
Taking these awards into consideration and bearing in mind that plaintiff was never arrested, and only voluntarily detained by the police for ten or fifteen minutes, and that he suffered no great humiliation, mental anguish and defamation of his name, we are of the opinion that the award of damages should be reduced from the sum of $758.00 to the sum of $250.00.
There is evidence contained in the record to the effect that plaintiff and his counsel agreed upon a fee of $250.00 for resisting the charge filed by defendant in the Municipal Court and we, of course, have no doubt that plaintiff considered this a reasonable fee, however, we are of the opinion that the facts divulged herein do not warrant a judgment for the plaintiff of sufficient amount to compensate him for both his damages and attorney's fee.
For the reasons assigned the judgment appealed from is amended by reducing the amount of the award from $758.00 to $250.00 and as thus amended, it is affirmed.
Amended and affirmed.